The decision of the District Court should be reversed because it conflated the issue of subject matter jurisdiction with the premature analysis of the merits of the claim. The District Court had the power to decide and hear the issues. The question of whether appellants can prevail on their induced infringement claims must be left for another day, after discovery and approval. Whether it's jurisdiction or failure to state a claim, don't you lose because they're not asking for approval of a patented use? The District Court and the appellee's argument are premised on the fact that you cannot state a claim under 271E2 for induced infringement unless the ANDA applicant explicitly seeks approval for the patented indication. We, that derives from this Court's holding in Warner-Lambert, and we do not believe this Court's holding in Warner-Lambert was so limited. We believe the holding of this Court in Warner-Lambert was- Well, didn't they both, Warner-Lambert and here, the generic companies asking, being sued by the patent holder for the generic companies asking for approval of a non-patented use. Isn't that the same in both cases? In Warner-Lambert, the generic was not seeking approval for the non-FDA approved use because it- Well, the FDA approval is the FDA's business. We're dealing with 271E2, which is a patent provision. Correct. And if someone is not asking for approval for a use that is patented, there's no patent infringement. Whether you call it failure to state a claim or jurisdiction, you lose, right? I beg to differ. That would assume that the simple filing of a Section 8 statement would immunize the generic from a lawsuit and basically usurp the federal courts from jurisdictions to hear and resolve those disputes. Well, because it's not a live case. I mean, why shouldn't it? They're not asking for something over which you have a patent. So why should you? 271E2 is never a live case. There is never anything on the market. It is in- But in those 271 and Paragraph 4 certification cases, you have a patent. They're asking to affirmatively, proactively do something that will violate your patent rights when they do them. In a Paragraph 8 or Section 8 case, they're asking to do something that will not in any way impinge upon your patent rights. Now, you think it will under the inducement theory. I understand your theory, but it doesn't in a direct infringement sense. What we are saying is that there are two separate provisions. You have the certification provisions from the Food, Drug, and Cosmetic Act, which govern whether the generic will certify for method of use patents under Paragraph 4 or under Section 8. We're saying irrespective of which certification provision you have, we still can bring a lawsuit under 271E2 of the patent statutes, because the act of infringement under 271E2 is the submission of an ANDA with the intent to market the drug before the expiration of the patent. But the specific language of that section you just cited says that it's an act of infringement to seek an ANDA for a drug, the use of which is claimed in a patent. Correct. The use of which is claimed in a patent. Are these uses that they are seeking their ANDA for claimed in a patent? The use of which is claimed in a patent was the issue in the Warner-Lambert holding. In Warner-Lambert, the court held that the use of which is claimed in a patent has to be FDA-approved uses. They have attempted to excise out the patented indication, but we know from this court's holding in AstraZeneca v. Apotex, that despite the fact that they haven't attempted to, they have. They have extracted that out. They've only claimed things which are not recited in your patent. No. They have excised out the specific patented indication, but that does not mean that we still believe that the uses listed in their ANDA will still induce infringement of our FDA-approved method of use patents. But if they're not asking for it, whatever they do later, you can sue them later under 271A. You're not necessarily out of court, but under 271E2, based on, as Judge Rader recited in the statute, they must be asking for a use claimed in a patent. Let's back up a couple of points raised by that. Number one, for us to wait and bring in a lawsuit under 271B for induced infringement of these method of use patents is contrary to the whole purpose and intent of the Hatch-Waxman Act, which was to provide for early resolutions of patent suits. If an act is proposed in an ANDA that will infringe a patent, that was the purpose of the Hatch-Waxman Act. And we submit that the uses in their ANDA will induce infringement of our FDA-approved method of use patents. Those are the facts that we have yet to be able to prove. Even if that's a good argument, and it strikes me as a very good argument, does it fit the statute? How do we get around the statutory language? The statute says it is the submission of the ANDA seeking approval to sell or market a drug, the use of which is claimed in a patent. And that has been interpreted under Warner-Lambert to be uses that are FDA-approved. And the whole intent of that decision in Warner-Lambert was that it was a legal impossibility for the generic to seek approval of a non-FDA-approved use. And that is— Well, it might have been interpreted in Warner-Lambert to be uses that are FDA-approved, but the statute also requires it to be a use, which is claimed in a patent, and we can't get around that language. Regardless of how you'd like us to interpret Warner-Lambert, Warner-Lambert's not in conflict with the statute. Warner-Lambert may have added an additional requirement, but it can't eliminate the requirement of the statute, which has now been quoted to you three times by the judges, but you don't seem to be responding to it. The use of which is claimed in the patent, we are saying that they are seeking approval for the uses which are claimed in our patent. But that's directly contrary to their application. That's looking at the carved-out— It's looking at what you think will happen down the line, ex post, but it's not looking what's in their application. And those are the proofs that we're entitled to prove, because just as this court held in AstraZeneca v. Apotex, where there was an attempt to excise out the patented once-a-day dosing scheme, nevertheless, there was still enough evidence in the label and elsewhere to support an evidence of a likely-induced infringement, and that is exactly the situation we have here. You cannot take Section 8 statements— And their label doesn't ask anyone to use the drug in a manner that is claimed by the patent. In fact, the skinny labeling expressly tells people not to use it that way. Well, we take issue with the bizarre language on the one indication, which it says, wink-wink, look at AstraZeneca's label, and we can't seek approval because of their marketing exclusivity. But those are facts that we would like to prove, that we're denied the ability to prove based on a subject-matter jurisdiction analysis in the lower court. We're just simply here to seek our day in court, which we were denied based on a Rule 12b-1 motion, and the court went on to address the validity of our claim when we didn't even have the ability to prove our facts. If you get past 12b-1, do you still have the 12b-6 problem? We don't think so, Your Honor. And that's based on Warner-Lambert? That's based on Warner-Lambert, that's correct. And AstraZeneca's diabetics, and we submit that you cannot take—it would be improper to permit generics to file Section 8 statements thinking they would be immunized from suit, which would unilaterally give them the ability to determine at the outset whether or not their ANDA submission infringed, and basically usurp the powers of the federal courts— Generally, the purpose of an ANDA and a generic applicant is to market the product for the use that the innovator is marketing it for. That's exactly my point, Your Honor. That's exactly the point, and that's exactly the proofs that we would like to be able to prove in the lower court, is that we believe that irrespective of the attempt to carve out a patented indication, nevertheless, doctors can and will prescribe that generic drug for the very same uses that the branded drug is indicated for. At which point you sue, right? But that defeats the whole purpose of the Hatch-Waxman Act, which is intended to give us the ability to bring and resolve these patent disputes early. It is a benefit to the ANDA applicant just as it is a benefit to the patentee. I understand your policy-based arguments on why it might be beneficial to allow it, but I just don't see how we get around the clear language that Congress only carved out access to the courts and advancing the ANDA process when they are actually applying for the use in your patent. I understand your policy-based arguments on why it might be great to change the law, but they're not properly directed at us. You've got to push them over the hill. No, I don't. The ability to bring the lawsuit is based on the patent laws, and it's based on 271E2. And I do not believe that you can read the limitations of the Food, Drug, and Cosmetic Act notification provisions into the plain language of the statute. The language of that statute does not say that if you file a Section 8 statement and you carve out the patented indication that you don't have a cause of action. No, it says you only do have a cause of action when they're applying for the use you have patented. And we are submitting that they are applying for the uses for which we have a patent. We are submitting that the uses listed in their ANDA will induce infringement of our method of use patents, irrespective of the carve- But that's not them applying for those uses. It's quite a clear factual distinction. It's a question of- It may happen, but it's not them applying for those uses. And that's all that's allowed under 271E to create a special cause of action. It's a question of how you interpret the language, the use of which is claimed in a patent. Also, the word purpose is in that statute, too. Purpose can't be shown any better than what they ask for in their ANDA. We are submitting what they've asked for in their ANDA will induce infringement of our method of use patents, and that's what we would like to prove. We weren't entitled to prove those facts, and what we're saying here is based on the facts that we have here, because the patented indications are related and so overlapping that irrespective if they try to carve out the one single patented indication that the uses listed in their ANDA will nevertheless induce infringement of our method of use patents. And those are the facts we'd like to prove, and those are the facts that we were denied on a 12B1 motion. I see I'm into my rebuttal time. Let's hear from Mr. Bruner. Mr. Bruner? Good morning, Your Honors. May it please the Court, Shane Bruner for Aurobindo. The district court's dismissal of this case should be affirmed for two primary reasons. The first, even if these claims are ripe, the appellants failed to state a claim under 271E2 in this court's precedent in Warner-Lambert. And secondly— It's not a jurisdiction issue, is it? Your Honor, I don't think it matters. I think that either there isn't subject matter jurisdiction or a claim hasn't been stated. So whatever way you come down on it, our subject matter jurisdiction argument— There is jurisdiction even if they lose. Just like you can bring a 271A infringement action and lose, but there's jurisdiction because the statute provides for a cause of action. Are you referring to after the fact? When the companies will market? Are you referring to the jurisdiction under 271E2? The court decided no jurisdiction here, right? Correct. Do you defend that ground? I do. We do on the grounds. Two cases. One, that the claims are not ripe based upon the allegations that they've made. Secondly, 271E2 was created for the purpose of conferring jurisdiction in a situation where jurisdiction wouldn't otherwise exist. It establishes a case of controversy and a cause of patent infringement based on the filing of an ANDA for seeking approval for the use claimed in the patent or seeking to market a drug for a drug patent. As AstraZeneca has even said in their briefs, to have the subject matter jurisdiction, you have to both invoke a federal statute and state a claim upon which relief can be granted. What they have alleged here and what the conduct that the appellees have done, what they seek approval for, just doesn't fit under that statute. So whether we call it lack of subject matter jurisdiction or whether we call it failure to state a claim, I think the result is the same. What's your reading of Warner-Lambert? Well, our reading of Warner-Lambert is that Warner-Lambert controls. I think Warner-Lambert, the holding is, is that if the ANDA applicant does not seek FDA approval for the use claimed in the patents and suit, there is no cause of action. Now, Warner-Lambert addressed the issue of controlling use. And it looked at the plain language of the statute and said, in the statute, the use means the use for which the ANDA applicant is seeking approval. And the language a patent in the statute means the patent in suit. So based upon that statutory construction, Warner-Lambert says, and I quote, Congress clearly intended to limit actions for infringement of method of use patents under 271E2 to controlling use patents, which they defined as uses for which the ANDA applicant was seeking approval. Just to help me out here with what's going on in your world, why would you do this? Because if you put your drug out there under these limited uses, there's at least a substantial likelihood that there will be induced infringement. They're going to then cite back to this proceeding as evidence that you knew of the risk and undertook it, then you'll get a willfulness as well as an infringement. Help me out with your strategy here. The reason why the generics do this is because it's permitted under Section 8. Congress clearly made the policy. Yeah, but you wouldn't just do everything that's permitted if it's going to hurt your business. I'm trying to figure out the business angle. The bottom line, though, is the law of inducement. Generics don't promote drugs. They sell drugs. They don't promote them for uses other than what's in their label. Their label is the only point where it says— So you think you can win the inducement case? Inducement requires a specific intent along with active encouragement to induce— Okay, I got your point. You're going to run the risk. I got it. In other words, you don't have salesmen who go into physicians and say, this is off-label, but prescribe it for this. That's absolutely correct. That's the way that the generic market works, and therefore the generics are not going to induce infringement later in time. But to their point, they bring out this situation that it's going to happen and we'll have no cause of action. Well, if it does happen, if the generics do actively encourage infringement, there's a 271 A and B case that they can bring if and when that happens. If they find in your files a memo saying, we expect physicians will be prescribing it for this patented use, and you're willing to run that risk. Well, and that's only half of the inducement calculus because one is the specific intent that it happened. Second is that you actually go and actively encourage it to happen. You're saying if physicians do it without your inducement, there's no inducement. That's exactly correct. This court's precedent in Warner-Lambert specifically addressed this issue. Then we have DSU and we have Vitamix that all address this very issue, that you need to have the specific intent and the active encouragement. Mere knowledge that somebody else is using your product and infringing away without the active encouragement does not qualify as inducement under this law. If you continue selling to them with the knowledge that they're using it in an infringing fashion, wouldn't that be problematic? I'm continuing to sell it to you knowing all along that you're going to use it for pediatric use, even though I tell you now, don't use it for pediatric use, wink, wink, here you go. Well, this is a 271 B situation, so that's not what's happening here. So I don't know what all those facts are, all the facts that would go into that. I think that's her argument for why there shouldn't have been a dismissal for lack of jurisdiction because all the facts haven't been developed yet. But that's not what 271 E-2 cases are for. E-2 cases are specifically limited to the situation where they seek FDA approval for the use claimed in the patent in suit. Section 8 describes actually the opposite conduct. It says when you're not seeking FDA approval for the use of a patent, tell us that and then carve it out of your label, and then we will not delay or block the approval of your ANDA. Has the FDA required you to add information regarding pediatric uses onto your label as they hypothesized would happen in the complaint? This goes to the ripeness issue. The ripeness issue, as I understand it, their complaint says, quote, the FDA will require the label for blanky blank to include information relating to the use to treat pediatric patients. Has the FDA placed such a requirement on you? No. No. And that was shown. We disclosed in the motions to dismiss the tentative approvals from the FDA, which means that everything is okay with your whole ANDA but for an outstanding patent issue, which in this case was the 314 patent from previous litigation. We submitted Section 8 statements that said we are not seeking approval for the uses in the 618152 patent, and we showed our labels. In those instances, there was no requirement of the FDA that we have information or a request to approval to treat heterozygous familial hypercholesterolemia or the indication of the 152 patent. Presumably, you're seeking approval for an approved use. Otherwise, you'd need an NDA. It's an FDA issue rather than a patent issue. It is an FDA issue. The patents listed in the Orange Book in the current regulation, 314.53, says that only list approved patents in the Orange Book. So we're always dealing with approved uses. Section 8 is always dealing with approved uses. In Warner-Lambert, that particular language wasn't in the regulation, so perhaps that is how an unapproved use got listed in the Orange Book. But we're always dealing with approved uses. Whether it's approved or unapproved is really no principled way to distinguish Warner-Lambert from our case. Like we said, the statute talks about what use are you seeking approval for. It's not is it approved or unapproved. We look at the legislative history that was looked at at Warner-Lambert. That's not a patent issue. That's an FDA issue. Well, it's a patent issue to the extent that 271E requires that you seek approval for the use in the patent. So to that extent, yes. We look at the legislative history that was relied upon in Warner-Lambert. There we have the exact situation that we have here, the exact situation where there's two approved uses and the applicant seeks approval for less than all those uses. And Congress says you do not have to delay the approval of the application based upon that. And finally, one more point that I think makes clear that the approved versus unapproved is a distinction without a difference is that these uses are going to be, the uses for the 618 and 152 patents, are going to be unapproved for the generics. We are not going to be allowed to promote it for those uses. There's civil and criminal sanctions for approving for those uses. That's FDA law, but that's what, it would be illegal to do that. Finally, I guess to just address the point that the appellants are asking for discovery, there's no discovery that can change what the facts are here. We're not seeking approval for the uses. No amount of discovery can change that. The fact that something might happen in the future, that's to be addressed in the future. If our label is required to be changed, then maybe there's an E2 action if we have to include indications for the 618 and 152 patents. If we actually market and promote for the uses in those patents, there might be a 271B case. But there's nothing that discovery can change at this point with this case. So if the court has no further questions, I submit that the court should affirm the district court. Thank you, Mr. Bruner. Thank you. Ms. Borca. First, to address I think one of the issues that was raised, subject matter jurisdiction is a separate inquiry from failure to state a claim. That's quite clear from the governing rules on Rule 12B1, where you can state it at any point in time, and under 12B6 you have to make your motion before an answer has been filed. In fact, the whole issue here is the court did have jurisdiction. In fact, it exercised its jurisdiction when it went on to determine whether we had stated a quote-unquote, a valid claim or not. Going back to the AZ-Viapatex case, because it's very important to understand there that the issue there was that the ANDA as a whole was likely to induce infringement. In that situation, it's a classic example where there was a Section 8 carve-out that was approved by the FDA that indeed led to a finding that there was evidence elsewhere in the label and other evidence that there in fact would be induced infringement. Just as Paragraph 4 certifications can be in error, Section 8 statements can be in error, and the innovator companies should have a venue to vet the correctness or incorrectness of those statements. To state otherwise would allow the generic to simply file Section 8 statements after Section 8 statements, avoid the 30-month stay, avoid a lawsuit, and thereby deprive the patentee of his stay in court. They also avoid approval for the patented use. And in some instances, that may be true. Well, let me back up a second. They would not get approval for that specific patented indication. That is true, but that doesn't answer the day, as to whether the uses that they have listed in their ANDA at the end of the day will nevertheless still induce infringement. In terms of the discovery that we would seek, we don't even have all of the labels yet. We would seek to see what the generics are doing in terms of their therapeutic equivalent substitutability requests because, in fact, what truly is going to happen in the marketplace is those generic drugs will be substituted freely by doctors and pharmacists for the very same indications for which the branded drug will be prescribed. And indeed, the last piece of evidence would be to look at their market projections because I guarantee you that none of the generics have carved out these indications when they're predicting their level of sales. With that, I see my time is up. Thank you. Thank you very much. That concludes our morning.